IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

DENNIS LEROY GORDON,                    Case No. 6:13-cv-01130-MA

            Petitioner,                OPINION AND ORDER

    v.

JEFF PREMO, Superintendent,
Oregon State Penitentiary,

            Respondent.


ANTHONY D. BORNSTEIN
Federal Public Defender's Office
101 SW Main Street, Suite 1700
Portland, OR 97204

       Attorney for Petitioner

ELLEN F. ROSENBLUM
Attorney General
KRISTEN E. BOYD
Assistant Attorney General
Department of Justice
1162 Court Street N.E.
Salem, OR 97301-4096

       Attorneys for Respondent

MARSH, Judge

1 --- OPINION AND ORDER

Petitioner, an inmate at the Oregon State Penitentiary, brings this habeas corpus proceeding pursuant to 28 U.S.C. § 2254. Petitioner challenges the constitutionality of the Oregon Board of Parole and Post-Prison Supervision's deferral of his parole release date. For the reasons set forth below, his habeas petition is denied.

### BACKGROUND

On September 4, 1975, petitioner raped a woman at gunpoint in her Roseburg home. After the attack, he threatened the victim that he or his friends would return to harm her if she told anyone. *Gordon v. Bd. of Parole and Post-Prison Super.*, 246 Or. App. 600, 602, 267 P.3d 188 (2011). Eighteen days later, after the victim testified before a grand jury, petitioner chartered a plane from Hood River and returned to the woman's home. Petitioner drove the woman and her two youngest children to a secluded location, where he stabbed the woman repeatedly and placed her body on the floorboard of the car at the feet of her children. *Gordon v. Bd. of Parole and Post-Prison Superv.*, 267 Or. App. 126, 128, 340 P.3d 150 (2014). Later, while the victim may still have been alive, petitioner beheaded her, and buried her body and head at separate locations. *Id.; Gordon v. Bd. of Parole and Post-Prison Superv.*, 343 Or. 618, 620, 175 P.3d 461 (2007); *Gordon v. Bd. of Parole and Post-Prison Superv.*, 266 Or. App. 405, 408-09, 338 P.3d 185 (2014); *Gordon*, 246 Or. App. at 602-03. The victim's children were left in

the family car and found by police several hours later. Petitioner returned to Hood River in the same chartered plane he arrived in. *Gordon*, 246 Or. App. at 603.

In 1976, petitioner pled guilty to Murder and Rape in the First Degree. He received an indeterminate sentence not to exceed life imprisonment for the murder, and a consecutive indeterminate 20-year sentence for rape. Resp. Exh. 101.

## I.   **Relevant Parole Rules**

When petitioner committed his crimes, Oregon's sentencing scheme was known as the discretionary system. Under that system, a prisoner serves an indeterminate sentence, and the board periodically considers whether the prisoner is suitable for release on parole. *Gordon*, 343 Or. at 620.

In 1977, the state legislature replaced the discretionary system with a matrix system. *Id.* at 621. Under the matrix system, most prisoners receive a firm parole release date, which may be postponed for statutory reasons only.[1] *See Id.* at 621-22. Unless the parole release date is postponed, the prisoner must be released on his parole release date. *Id.* at 622; *Hamel v. Johnson*, 330 Or. 180, 187, 998 P.2d 661 (2000). Offenders who committed their

---

[1] The statutory bases for postponing a parole release date are (1) the inmate has engaged in serious misconduct while in prison; (2) the inmate has a severe psychiatric or psychological disturbance such as to constitute a danger to the health or safety of the community; and (3) the inmate's parole plan is inadequate. *Gordon*, 343 Or. at 622 (*citing* ORS 144.125).

crimes before the adoption of the matrix system are permitted to opt into the matrix system, and the prisoner's eligibility for parole is then determined using the rules in effect at the time of his election. *Gordon*, 343 Or. at 622-23.

At all relevant times, ORS 144.125(3) provided that "[i]f a psychiatric or psychological diagnosis of present severe emotional disturbance such as to constitute a danger to the health or safety of the community has been made . . .," the board may order the postponement of the scheduled release date." 1981 Oregon Laws, c. 426, § 2; 1987 Oregon Laws, c. 320 § 53; *see also Gordon*, 343 Or. at 627 n.7. In *Weidner v. Armenakis*, the Oregon Court of Appeals held that under ORS 144.125(3), the board may consider *all relevant information in the record* when considering whether a prisoner suffers from a severe emotional disturbance. 154 Or. App. 12, 17-18, 959 P.2d 623 (1998), *withdrawn by order* July 13, 1998, *reasoning reaff'd. and readopted in Merrill v. Johnson*, 155 Or. App. 295, 964 P.2d 284 (1998); *Gordon*, 343 Or. at 627.

However, in *Peek v. Thompson*, the Court of Appeals held that the board's 1988 adoption of OAR 255-60-006(8) requires a formal finding *in the psychiatric or psychological evaluation itself* as a prerequisite to the board's authority to postpone a prisoner's parole release date. 160 Or. App. 260, 264-66, 980 P.2d 178

(1999); *Gordon*, 343 Or. at 628-29.[2]  Hence, if the board applies the 1988 version of OAR 255-60-006, the psychiatric or psychological report itself must support a determination that petitioner suffers from a severe emotional disturbance.  However, if the board applies the rules in effect in 1984, it may rely on all pertinent evidence in the record.  *See e.g. Gordon*, 267 Or. App. at 132-33; *Gordon*, 266 Or. App. at 414.

II.  **Petitioner's Parole Board History**

    • **1984 (First Matrix Election)**

On August 1, 1984, petitioner signed an application to receive a firm parole release date under the matrix system, rather than remain under the discretionary system.  Resp. Exh. 103 at 76.  On that same date, the board held a Personal Review Hearing and, on August 10, 1984, issued a Board Action Form ("BAF") calculating petitioner's matrix range to be 198 to 268 months, and setting a parole release date of March 15, 2000.  *Id.*; *Gordon*, 343 Or. at 623.

Petitioner filed an appeal.  In the process of preparing a transcript for appeal, it was discovered that the August hearing had not been recorded.  Resp. Exh. 103 at 77.  As a result, the

---

[2] OAR 255-06-006(8) (1988) provides that "[i]f the evaluation does not make a finding of severe emotional disturbance such as to constitute a danger to the health or safety of the community, the Board shall affirm the parole release date and set parole conditions."  *Peek*, 160 Or. App. at 264.

board "voided" its August 10, 1984 BAF, and referred the matter to
an "analyst for recomputation of [petitioner's] History/Risk score"
(a matrix calculation).   *Id.* at 205; *Gordon*, 343 Or. at 623.

### • 1985 (Discretionary System Election)

On May 15, 1985, petitioner appeared at a parole hearing and
requested that he be considered for parole under the discretionary
system in effect at the time of his crimes.   Resp. Exh. 103 at 81
& 283-84.   During a discussion with petitioner, one board member
agreed with petitioner's assertion that his 1984 matrix election
was invalid because the board action had been voided.   *Id.* at 284;
*Gordon*, 343 Or. at 624.   Consistent with this understanding, the
board's BAF reflects petitioner's election as *remaining* under the
discretionary system.   Resp. Exh. 103 at 81 & 209-13.   The board
continued to consider petitioner under the discretionary system
through 1987.   *Id.* at 210-19; *Gordon*, 343 Or. at 624.

### • 1988 (Second Matrix Election)

On August 27, 1988, petitioner signed a second application
requesting that he be placed under the matrix system in order to
receive a firm parole release date.   Resp. Exh. 103 at 221.
Pursuant to that request, the board established a 212-284 month
matrix range, and a parole release date of March 15, 2000 (later
advanced by 7 months to August 15, 1999).   *Id.* at 224-26 & 229-30
(BAF #2 & #4); *Gordon*, 343 Or. at 624-25.   The board held
additional parole hearings in 1991 and 1994, resulting in no change

to petitioner's August 15, 1999, parole release date.  Resp. Exh. 103 at 234-38 (BAF #6 & #7).

- **Deferral of Parole Release Date**

On February 2, 1999, the board deferred petitioner's parole release date by 24 months on the basis that he suffers from a present severe emotional disturbance such as to constitute a danger to the health and safety of the community.  *Id.* at 240-52 (BAF #8 & Administrative Review Responses (ARR) #2 & #3).  Petitioner's parole release date was deferred to August 15, 2001.  *Id.* at 240.

In ARR #3, the board explained that its decision to defer petitioner's parole release date was premised upon petitioner's election to opt into the matrix system on *August 27, 1988*, rendering the *Peek* decision applicable to its decision (requiring a formal finding in a psychiatric or psychological evaluation in order to extend petitioner's parole release date).  *Id.* at 251. Relying solely on the psychological evaluation of Dr. Ronald Page, the board concluded that petitioner suffers from a severe emotional disturbance.  *Id.* at 251-52.

On May 2, 2001, the board deferred petitioner's parole release date an additional 24 months.  *Gordon*, 343 Or. at 630; *Gordon*, 267 Or. App. at 134.  The board again relied upon petitioner's *1988* election into the matrix system, applied the *Peek* decision, and concluded that Dr. Rubin's psychological report contained a

diagnosis of a severe emotional disturbance. *Gordon*, 343 Or. at 630.

On administrative review, the board affirmed the deferral of petitioner's parole release date. However, the board changed its rational, concluding that petitioner initially opted into the matrix system in *1984*, rendering the *Peek* decision inapplicable (thereby allowing the board to consider all relevant information in the record). *Id.*; Resp. Exh. 103 at 258-59. Alternatively, the board concluded that even under *Peek*, there was some evidence to support the board's decision. Resp. Exh. 103 at 259; *Gordon*, 343 Or. at 628.

- **Board Explains Reliance on 1984 Matrix Election**

On June 2, 2003, the board reopened for reconsideration ARR #3 (concerning the first 24-month deferral of petitioner's parole release date). Resp. Exh. 103 at 285. The board held that it had erroneously relied on petitioner's second matrix election in 1988, rather than his initial election in 1984. Accordingly, the ARR was amended to reflect that petitioner made his first matrix election on August 10, 1984, and that the board was relying upon the rules in effect in 1984. Resp. Exh. 103 at 285-86 (ARR #5). The Oregon Supreme Court reversed, and remanded to require the board to provide an explanation for its departure from prior practice of relying on petitioner's 1988 election. *Gordon*, 343 Or. at 635-38.

On remand, the board explained in BAF #14 that it relied on petitioner's 1984 matrix election, rather than the later 1988 election, in order to avoid the limitations *Peek* placed on its discretion. Resp. Exh. 104, ER-11. The board stated that prior to *Peek* "there was little reason for the Board to contemplate a specific time frame for opting into the matrix or, more specifically to this case, for formulating a practice for when offenders opt into the matrix, opt out of the matrix, and then attempt to opt into the matrix again." *Id.* Additionally, the board held that, even under the more restrictive *Peek* standard, substantial evidence supported the deferral of petitioner's parole by 24 months. *Id.* at ER-12. Administrative review was denied. Resp. Exh. 101 at 12 (ARR #10).

Petitioner appealed the board's order on the basis that it was (1) not supported by substantial evidence in the record; (2) based on an erroneous interpretation of the law; (3) inconsistent with prior practice; and (4) not logically related to the facts of the case. Resp. Exh. 104 at 26. Additionally, petitioner argued that the board violated the Due Process Clause of the U.S. Constitution by "reversing course and deciding that, although it had previously considered petitioner's 1984 election to be void, that was actually the effective election date for determining what version of its rules applied." Resp. Exh. 104 at 41-42.

In a responsive brief, the State argued that the board's explanation on remand as to why it relied upon petitioner's 1984 election was fair and rational. The State also argued that the board's finding that petitioner suffers from a present severe emotional disturbance was supported by substantial evidence in the record under the 1984 *and* 1988 rules. Finally, the State asserted that petitioner's federal due process argument was unpreserved and, in any event, lacked merit. Resp. Exhs. 105 & 113.

The Oregon Court of Appeals affirmed the board's decision, using petitioner's 1988 matrix election and applying the more restrictive rule announced in *Peek* (rendering a decision under 1984 rules unnecessary). *Gordon*, 246 Or. App. at 609-13. The court declined to consider petitioner's constitutional arguments on the basis that they were not sufficiently preserved. *Id.* at 612 n.11. Petitioner sought review by the Oregon Supreme Court, but did not challenge the Court of Appeals' ruling on the preservation issue. Resp. Exh. 109. The Oregon Supreme Court denied review. *Gordon*, 352 Or. 341 (2012).[3]

///

---

[3] More recently, the Oregon Court of Appeals addressed the board's 2011 deferral of petitioner's parole release date for 10 years. The Court of Appeals rejected petitioner's contention that his 1984 election was ineffective, and held that the board's reliance on petitioner's 1984 matrix election (in order to consider the most information available to the board in reaching its decision) was rational, fair, and principled. *Gordon*, 267 Or. App. at 145-47.

**DISCUSSION**

Petitioner alleges that the board violated his constitutional rights to due process, equal protection, and to be free from cruel and unusual punishment by (1) failing to release him on his firm release date of August 15, 1999; (2) calculating his parole eligibility based upon evidence outside the psychological report; and (3) concluding that the psychological report itself supports a finding that petitioner suffers from a severe emotional disturbance. Habeas Petition (ECF No. 3) at 5-13. Respondent moves the court to deny habeas relief on the basis that petitioner's claims are procedurally defaulted, the state-court decisions are entitled to deference, and petitioner's claims lack merit.

**I.    Procedural Default**

Generally, a state prisoner must exhaust his available state court remedies before seeking federal habeas corpus relief. 28 U.S.C. § 2254(b)(1). If a state prisoner procedurally defaults his available state remedies, federal habeas relief is precluded absent a showing of cause and prejudice, or that the failure to consider his federal claims will result in a fundamental miscarriage of justice. *Coleman v. Thompson*, 501 U.S. 722, 750 (1991).

A state prisoner procedurally defaults his available state remedies if (1) the state court declines to address the prisoner's federal claims; and (2) the state court decision rests on a state

procedural rule that is *independent* of the federal question and *adequate* to support the judgment. *Walker v. Martin*, 131 S.Ct. 1120, 1127 (2011); *Maples v. Thomas*, 132 S.Ct. 912, 922 (2012); *Bennett v. Mueller*, 322 F.3d 573, 580 (9th Cir. 2003).

The question of whether a state procedural rule is adequate is a question of federal law. *Lee v. Kemna*, 534 U.S. 362, 375 (2003). When the respondent pleads the existence of an independent and adequate state procedural rule as an affirmative defense, the burden shifts to the petitioner to demonstrate the inadequacy of the state rule. The respondent bears the ultimate burden of proving the state rule bars federal review. *Bennett*, 322 F.3d at 585-86.

To be "adequate," a state procedural rule must be well-established and consistently applied in the manner it was applied to the petitioner. *Walker*, 131 S.Ct. at 1127; *Scott v. Schriro*, 567 F.3d 573, 576 (9th Cir. 2009); *Bennett*, 322 F.3d at 583. "There are, however, exceptional cases in which exorbitant application of a generally sound rule renders the state ground inadequate to stop consideration of a federal question." *Lee*, 534 at 376.

In the instant proceeding, respondent argues that petitioner's due process claims are barred because the Oregon Court of Appeals expressly rejected the claims as unpreserved pursuant to ORAP 5.45(1). *See Gordon*, 246 Or. App. at 612 n.11. Pursuant to that

state procedural rule, "[n]o matter claimed as error will be considered on appeal unless the claim of error was preserved in the lower court and is assigned as error in the opening [appellate] brief." The preservation requirement of ORAP 5.45(1) applies to judicial review of administrative proceedings. *Entrepreneurs Found. v. Emp't. Dept.*, 267 Or. App. 425, 428-29, 340 P.3d 768 (2014); *Wahlgren v. Dept. of Transp., Driver & Motor Vehicles Serv. Branch*, 196 Or. App. 452, 457, 102 P.3d 761 (2004).

This court has held repeatedly that ORAP 5.45(1) is adequate to preclude habeas corpus relief. *See Ofenham v. Coursey*, 2014 WL 5810730 *5 (D.Or. Nov. 7, 2014) (citing cases). Petitioner argues, however, that the requirement that a state prisoner first raise his constitutional claims to the very agency that violated his constitutional rights renders the rule unconstitutional and inadequate to support the invocation of the independent and adequate state rule doctrine. I disagree.

There is no unfairness, irregularity, or injustice in a state appellate court's insistence that an appellant first present his objection to the agency from which he seeks judicial review. The preservation requirement assists in the development of a full record to facilitate review, and promotes fairness and judicial efficiency. *See Entrepreneurs Found.*, 267 Or. App. at 429. Petitioner offers no convincing support for his argument that the preservation rule violates due process. Hence, because

petitioner's due process claims were rejected by the Oregon Court of Appeals based upon an independent and adequate state procedural rule, and in the absence of any showing to excuse this procedural default, federal habeas corpus relief is precluded.

I similarly reject petitioner's alternate argument that state remedies are ineffective under 28 U.S.C. § 2254(b)(1)(B)(ii),[4] by virtue of the fact that he must first raise his constitutional claims to the parole board.  *See Newcomb v. Belleque*, 2012 WL 1758639, *7 (D.Or. Jan. 23, 2012), *aff'd* 536 Fed. Appx. 721 (9th Cir. 2013), *cert. denied*, 134 S.Ct. 1557 (2014); *Baker v. Nooth*, 2010 WL 3893936 *2-*3 (D.Or. Sept. 29, 2010).  Alternatively, as set forth below, I conclude that petitioner's due process claims lack merit.

## II.  **The Merits**

### A.  **Standards**

A petition for writ of habeas corpus, filed by a state prisoner, shall not be granted with respect to any claim that was adjudicated on the merits in state court unless the adjudication resulted in a decision that was "contrary to, or involved an unreasonable application of, clearly established Federal law;" or "resulted in a decision that was based on an unreasonable

---

[4] 28 U.S.C. § 2254(b)(1)(B)(ii) excuses the exhaustion requirement when circumstances exist that render state remedies ineffective to protect the rights of the petitioner.

determination of the facts in light of the evidence presented." 28 U.S.C. § 2254(d)(1) & (2); *Harrington v. Richter*, 562 U.S. 86, 100 (2011). The petitioner carries the burden of proof. *Cullen v. Pinholster*, 131 S.Ct. 1388, 1398 (2011).

A state court decision involves an unreasonable application of clearly established federal law if it correctly identifies the governing legal standard, but unreasonably applies it to the facts of the prisoner's case. *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003); *Himes v. Thompson*, 336 F.3d 848, 852 (9th Cir. 2003). An unreasonable application of federal law is different from an incorrect application. *Harrington*, 562 U.S. at 101; *White v. Woodall*, 134 S.Ct. 1697, 1702 (2014). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington*, 562 U.S. at 101 (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)); *White*, 134 S.Ct. at 1706-07; *Burt v. Titlow*, 134 S.Ct. 10, 16 (2013).

B. **Analysis**

Petitioner challenges the board's decisions in BAF #14 and ARR #10 deferring his parole by 24 months. In reaching its decision, the board considered a psychological evaluation by Dr. Page diagnosing petitioner with Personality Disorder, NOS, with antisocial features. Resp. Exh. 112 at 39-44; Exh. 103 at 47.

Additionally, Dr. Page opined that (1) petitioner's version of the murder and rape was "considerably more mild" than the facts demonstrate; (2) petitioner's perspective may be viewed as potentially manipulative and persuasive; (3) petitioner shows no psychopathology for which imminent psychiatric referral may be indicated; (4) the nature of petitioner's crime precludes confident assessment of his dangerousness particularly in light of his capability to delay gratification and curb his impulses in the interest of premeditated execution of his crimes; and (5) his violence potential may remain high, even though he has programmed well for many years. Resp. Exh. 112 at 39-44.

Based on Dr. Page's evaluation and the evidence in the record as a whole, the board first applied the 1984 rules to conclude that petitioner suffers from a severe emotional disturbance so as to constitute a danger to the health or safety of the community. Resp. Exh. 104 at ER-13 (BAF #14); *see also* Resp. Exh. 101 at 9 (ARR #10). In the alternative, the board concluded that based solely on Dr. Page's psychological report, there was sufficient evidence to conclude that petitioner suffers from a severe emotional disturbance.

In the instant proceeding, petitioner argues that (1) under the 1988 rules, the board violated his right to due process because Dr. Page's psychological evaluation does not support the finding that petitioner suffers from a severe emotional disturbance; and

(2) the board's application of the 1984 rules, is "constitutionally flawed."[5]

In *Swarthout v. Cooke*, 562 U.S. 216, 220 (2011), the Supreme Court held that there is no right under the Federal Constitution to be conditionally released on parole before the expiration of a valid sentence. However, if *state* law creates a protected liberty interest to parole, the Due Process Clause requires fair procedures. *Id.* In the parole context, the *procedural* protections are "minimal," and require only that the state prisoner be given the opportunity to be heard and a statement of reasons why parole was denied. *Id.* at 220; *Miller v. Oregon Bd. of Parole and Post-Prison Superv.*, 642 F.3d 711, 716 (9th Cir. 2011); *Roberts v. Hartley*, 640 F.3d 1042, 1046 (9th Cir. 2011). If the state affords the *procedural* protections required by *Cooke*, "that is the end of the matter for purposes of the Due Process Clause." *Roberts*, 640 F.3d at 1046.

Here, assuming that ORS 144.125 (1981) creates a due process right to early release on parole,[6] petitioner has made no showing that he was denied the minimal procedural protections (the

---

[5] Because petitioner has not addressed his *ex post facto* or Eighth Amendment claims, he has failed to demonstrate that habeas relief is warranted under either constitutional provision.

[6] *See Miller*, 642 F.3d at 714-16 (state parole statute establishes protected liberty interest when it uses language that creates a presumption of parole if certain conditions are satisfied).

opportunity to be heard and to a written decision) as required by the Due Process Clause.  Moreover, assuming that the Due Process Clause also requires that the board's decision be supported by "some evidence," and be free from the arbitrary application of state parole rules,[7] petitioner has failed to demonstrate that the board's decision violated those protections.  On the contrary, the board's decision to utilize the 1984 rules, in light of petitioner's August 1, 1984 election into the matrix system, is reasonable and supported by "some evidence."

The board explained that its previous reliance on petitioner's 1988 election was because, prior to the *Peek* decision, there was no reason to formulate a practice for determining when an offender *first* opts into the matrix system.  The board choose to rely upon petitioner's 1984 election because it permitted the board to consider the most information possible for making its decision. The fact that the board had voided its August 10, 1984, order, did not necessarily void petitioner's 1984 signed application to proceed under the matrix system.  In sum, the board's determination

---

[7] *See Branham v. Davison*, 433 Fed.Appx. 491, 492 (9th Cir. May 20, 2011) ("even after *Cooke* the Due Process Clause must still protect parole applicants against truly arbitrary determinations to deny parole-such as those based on random factors unrelated to the applicant's own record"); *Castro v. Terhune*, 712 F.3d 1304, 1314 n. 4 (9th Cir. 2013) (prison officials' validation of inmates as gang affiliates must be supported by "some evidence").

that petitioner elected into the matrix system in 1984 was not arbitrary and is supported by some evidence.

The board's alternate decision to defer petitioner's parole under the 1988 rules, based solely on Dr. Page's psychological evaluation, is also supported by some evidence.  Dr. Page's diagnosis that petitioner suffers from a personality disorder with antisocial features; that petitioner has minimized the facts of his crimes and is potentially manipulative and persuasive; and that petitioner's potential for violence may remain high, is some evidence that petitioner suffers from a severe emotional disturbance rendering him a danger to the health and safety of the community.

In sum, petitioner has failed to demonstrate that the board's deferral of his parole release date violated his right to due process.  The state courts' rejection of his due process claims is neither contrary to, nor an unreasonable application of, clearly established federal law.  Accordingly, habeas relief is not warranted.  28 U.S.C. § 2254(d)(1).

///

///

///

///

///

///

19 -- OPINION AND ORDER

## CONCLUSION

Based on the foregoing, petitioner's habeas petition (ECF No. 3) is denied.   Because petitioner has not made a substantial showing of the denial of a constitutional right, a certificate of appealability is DENIED.   *See* 28 U.S.C. § 2253(c)(2).

DATED this **28** day of April, 2015.

Malcolm F. Marsh
United States Magistrate Judge